**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

NICOLE M.,

              Plaintiff,

    v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

              Defendant.

Case No. 21 C 6441

Magistrate Judge Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Plaintiff Nicole M. seeks to reverse the final decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Acting Commissioner moves for summary judgment seeking an order affirming the ALJ's decision. For the reasons stated below, the ALJ's decision is affirmed.

## BACKGROUND

Nicole applied for DIB and SSI on October 9, 2017, claiming a disability beginning on December 31, 2016 due to bipolar disorder, post-traumatic stress disorder ("PTSD"), and a blood clotting disorder. Nichole was 38 years old on her alleged onset date. She is the victim of physical and sexual abuse as a child and adolescent by her father and other males who were acquaintances of her father. Nichole has two previous psychiatric hospitalizations at age 13 and age 36. She has received mental health treatment in the form of therapy and has taken various medications at different times, including lithium, sertraline, bupropion, lorazepam, citalopram, venlafaxine, lamotrigine, topiramate, clonazepam, trazadone, alprazolam, Risperdal, aripiprazole, and prazosin. Nicole has reported being generally compliant with her medications and taking them as prescribed. Nicole completed high school through the eleventh grade and has reported that she earned a GED

a year later.  Nicole attended trade school for print estimating and production.  She previously worked as an assistant manager at a tanning salon.

On May 12, 2021, the administrative law judge ("ALJ") issued a decision denying Nicole's applications. (R. 16-32).  The ALJ concluded that Nicole's depression and PTSD were severe impairments but did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 19-21.  The ALJ specifically considered Listings 12.04 (depressive, bipolar, and related disorders) and 12.15 (trauma and stressor-related disorders). *Id*.  The ALJ found Nicole's blood clotting disorder to be a non-severe impairment. *Id*. at 19.  Under the "paragraph B" analysis, the ALJ found that Nicole had a moderate limitation in the four functional areas of understanding, remembering or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. *Id*. at 20-21.  The ALJ then determined that Nicole had the residual functional capacity ("RFC") to work at all exertional levels with no limitation on her ability to lift and/or carry, sit, stand, or walk throughout an 8-hour workday but with the following nonexertional limitations: (1) non-hazardous work environments; (2) simple and routine tasks; (3) no more than simple decision-making; (4) no more than occasional and minor workplace changes; (5) only simple judgment; (6) no multitasking or considerable self-direction; (7) average production pace work; (8) no direct public service, but can tolerate brief and superficial public interaction that is incidental to her primary job duties; (9) no work in crowded, hectic environments; and (10) no tandem tasks but can tolerate brief and superficial interaction with coworkers and supervisors. *Id*. at 22-29.  Based on the vocational expert's testimony, the ALJ found that Nicole is unable to perform her past relevant work as an assistant manager. *Id*. at 29.  The ALJ found that Nicole was not disabled because she can perform jobs existing in significant

2

numbers in the national economy, including lithograph plate inspector and cleaner. *Id*. at 29-32. The Appeals Council denied Nicole's request for review on September 30, 2021. *Id*. at 1-6.

## DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, --- U.S. ----, 139 S.Ct. 1148, 1154 (2019) (quotation marks omitted). In reviewing an

ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

In support of her request for reversal, Nicole argues that the ALJ erred by (1) failing to properly evaluate her subjective statements, (2) rejecting the opinions of advanced practice nurse ("APN") Susan Dunne, and (3) failing to adequately assess the combined effect of her mental functional limitations on her ability to work full-time. The Court addresses each argument in turn and concludes that more than a mere scintilla of evidence supports the ALJ's decision.

## A.     Subjective Symptom Assessment

Nicole argues that the ALJ improperly discounted her subjective allegations. In her adult function report, Nicole stated that her conditions made it difficult for her to leave her house, alleging constant fatigue and an inability to complete tasks. (R. 413). Nicole testified that she experiences crying spells 3-4 times per day which last for 30 minutes each and she suffers panic attacks about once a week lasting 1-4 hours. *Id*. at 23, 46-47. The ALJ found Nicole's statements partially credible, concluding that her reports about the severity and frequency of her symptoms and the extent of her limitations were inconsistent with the treatment record. *Id*. at 23.

In evaluating subjective allegations, an ALJ assesses the objective medical evidence and a number of other factors, including the claimant's daily activities, effectiveness and side effects of any medication, treatment, other methods to alleviate symptoms, and factors that precipitate and aggravate symptoms. SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c), 416.929(c). "As long as an ALJ gives specific reasons supported by the record, we

4

will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022); *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support.").

None of Nicole's arguments show that the ALJ's analysis of her subjective symptoms was patently wrong. Nicole first challenges the ALJ's statement that he "expressly reject[ed] [Nicole's] allegation that she experiences crying spells, panic attacks, or other emotional symptoms and limitations which would preclude the performance of competitive work." (R. 23). Nicole claims the ALJ's statement evidences an "overly emphatic and disdainful" suggestion that she was "fabricating" her claims. Doc. 12 at 6-7. But the ALJ never found in his decision that Nicole was being untruthful. The ALJ simply evaluated the intensity and persistence of Nicole's alleged symptoms as he was supposed to do, and he was not required to accept Nicole's testimony about the severity and frequency of her symptoms. 20 C.F.R. §§ 404.1529, 416.929; *Grotts*, 27 F.4th at 1278 ("Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence."); *Elder v. Berryhill*, 774 F. App'x 980, 983 (7th Cir. 2019) ("[A]n ALJ may discount an applicant's testimony if . . . other evidence in the record provides a basis for doing so.").

Next, Nicole argues the ALJ engaged in a "misleading" assessment of the record by overemphasizing certain unremarkable mental status examination findings without evaluating more relevant information in the treatment records. Doc. 13 at 8. Specifically, Nicole contends that the ALJ erred in emphasizing that the mental status examinations revealed largely intact orientation, thought processes, attention, memory, judgment, and insight because, she says, those findings are not reflective of her work-related deficits. (R. 26). Rather, she argues that her claim

is based upon her inability to sustain attention and concentration and maintain social interactions within the context of full-time work.

It is well settled that an ALJ need not mention every piece of medical evidence in his decision and is prohibited only from ignoring a line of evidence contrary to his conclusion. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (while an ALJ "cannot simply cherry-pick facts that support a finding of non-disability," he "need not mention every piece of evidence, so long as he builds a logical bridge from the evidence to his conclusion."). Contrary to Nicole's contentions, the ALJ permissibly considered aspects of treatment reports showing many normal mental status examination findings and that mental status exams had not revealed significant abnormalities. (R. 26); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Moreover, the ALJ did not ignore Nicole's evidence suggesting that she suffered from attention and concentration deficits and social interaction problems that would prevent her from working full-time. For instance, the ALJ specifically considered: (1) that Nicole alleged she has a limited attention span and difficulty with concentration and getting along with others but lives with family members and visits with her mother and a friend (R. 20, 22, 27, 413, 417, 418); (2) that Nicole testified that she has difficulty with concentration and completing tasks, goes out on a daily basis to walk her daughter to school, and no longer socializes with friends and attributes this to her mental problems and tearfulness (*id.* at 23, 48, 51-52); (3) that in February 2017, Nicole stated her attention and concentration were good, though in August 2017 reported she was struggling with concentration (*id.* at 24, 550, 565); (4) Nicole's consultative examination in July 2018 showed normal attention and concentration and she was able to remain on task without redirection or reminding (*id.* at 20, 24, 28, 717); (5) in July 2018, May 2019, July 2019, November 2019, May

2020, and October 2020, Nicole's attention and concentration were intact on exams (*id*. 25, 26, 28, 709, 863, 870, 1258, 1311, 1327); (6) in progress notes in February 2017, Nicole reported creating an online group to discuss politics (*id*. at 20, 549) and in August 2017, she reported reading news on her phone all the time, playing games on her phone, doing gymnastics with her daughter, and helping her boyfriend's father with yard work, which all require concentration and persistence (*id*. at 20, 557); (7) that Nicole has described struggling in her relationship with her boyfriend but has also discussed taking care of her boyfriend's grandmother, planning to go back to school to become a nurse, and working with a friend doing demolition or rehab work on houses (*id*. at 20, 796, 812, 869, 1333); (8) in June 2018, APN Dunne opined that Nicole faced serious limitations in responding appropriately to supervision, coworkers, and customary work pressures and in her ability to perform tasks on a sustained basis, and would need frequent breaks (*id*. at 27-28, 706-07); (9) in August 2018 and October 2018, the state agency psychologists opined that Nicole's ability to concentrate and complete tasks is adequate, her social interactions are compatible with the requirements on standard work settings, and she would have no difficulties in working independently with usual supervision despite moderate limitations in social functioning (*id*. at 27, 79, 92); (10) in March 2020, APN Susan Dunne opined that Nicole has significant limitations in several areas of mental health functioning including: sustaining an ordinary routine without special supervision, working in proximity to others, completing a normal workweek, performing at a consistent pace, and maintaining socially appropriate behavior (*id*. at 28, 1287-88); and (11) APN Dunne opined that the Nicole would be off task more than 30% of a workday and absent 6 or more days per month, due to her symptoms (*id*. at 28, 1288). Given this record, the Court finds no misplaced reliance on normal mental status examination findings that would require remand.

Third, Nicole faults the ALJ for failing to explain how her performance of "basic, sporadic" daily activities translate into an ability to sustain full-time competitive work. Doc. 13 at 9. The Seventh Circuit has long cautioned against equating a claimant's ability to perform activities of daily living with their ability to work full-time. *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013); *see also Bjornson v. Astrue,* 671 F.3d 640, 647 (7th Cir.2012). However, "an ALJ is not forbidden from considering statements about a claimant's daily life. In fact, agency regulations instruct that, in assessing a claimant's symptoms, the evidence considered includes descriptions of daily-living activities." *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020).

Here, the ALJ stated that Nicole "reported an ability to help her children with their school schedules and school work, do chores, read and play games on her phone, and engage in some home rehabilitation jobs." (R. 27). The ALJ also discussed that Nicole's activities included taking care of her boyfriend's grandmother, creating an online group to discuss politics, reading news on her phone, doing gymnastics with her daughter, and helping her boyfriend's father with yardwork. *see also id*. at 20-21. However, the ALJ explicitly clarified that while Nicole's daily-living activities "may not be commensurate with substantial gainful activity, they do support a greater level of overall functioning than alleged." *Id*. at 27. This does not amount to the ALJ erroneously concluding that Nicole's daily activities support a conclusion that she can work full-time. *Kuykendoll v. Saul*, 801 F. App'x 433, 439 (7th Cir. 2020) (holding ALJ's evaluation of claimant's activities suggest he is not as limited as "one would reasonably expect given the functional deficits alleged" was "hardly equating the activities with the ability to work full time."). And the ALJ was entitled to rely on Nicole's part-time work activities as evidence that her mental impairments did not limit her as much as she alleged. *Berger v. Astrue*, 516 F.3d 539, 547 (7th Cir. 2008). The Court finds that the ALJ appropriately considered Nicole's daily activities as one of many factors

in assessing the severity of her alleged symptoms. *Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022).

Fourth, Nicole argues that the consultative psychologist's report supports her credibility. She faults the ALJ for neglecting to mention that the consultative examiner found her reports to be a valid representation of her functioning. Doc. 13 at 9. On July 24, 2018, consultative psychologist, John Brauer, Psy.D., evaluated Nicole. (R. 715-19). On examination, Nicole's concentration and attention appeared to be within normal limits in that she remained on task without re-direction or reminding throughout the exam; her general fund of knowledge appeared to be grossly intact; her capacity for abstraction was reasonably well-developed; she demonstrated adequate capacity for classification and categorization; her judgment appeared to be grossly appropriate; and she appeared to be able to manage funds adequately on her own behalf. *Id*. at 717-18. Nicole notes that Dr. Brauer then wrote that the evaluation "appears to be a valid representation of her current functioning," (*id*. at 718), and argues that this statement means that Dr. Brauer "endorsed" Nicole's description of her symptom history. According to Nicole, Dr. Brauer did not "doubt[] the frequency and severity of her symptoms." Doc. 13 at 9.

Nicole's characterization of Dr. Brauer's report is not accurate. In discussing Dr. Brauer's report, the ALJ accurately noted that Nicole described a symptom history consistent with depressed mood, manic episodes, and nightmares during the consultative examination. (R. 24, 718). Dr. Brauer did not say that he affirmatively endorsed Nicole's description of her symptom history, only that he believed based on Nicole's "responses to the interview," "her presentation," and "stated history," that the results of the mental status evaluation "appear[] to be a valid representation of [her] current functioning." *Id*. at 718. There is no question that Dr. Brauer determined that the results of the mental status examination accurately reflected her current mental

state considering her interview responses, presentation, and stated symptom history, which is all that his report can reasonably be read to indicate. It does not in any way suggest that Dr. Brauer accepted as true Nicole's statements about the frequency and severity of her symptoms.

Moreover, the ALJ did not err because, according to Nicole, he failed to specifically mention Dr. Brauer's statement that the exam results appeared to be a valid representation of Nicole's current functioning. Again "ALJs do not have a duty to discuss every single piece of evidence," and the ALJ's failure to mention this specific statement does not render the subjective symptom determination patently wrong. *Grove v. Kijakazi*, 2022 WL 1262131, at *2 (7th Cir. April 28, 2022). In determining that Nicole was not as limited as her subjective statements indicated, it is clear that the ALJ recognized that the mental status exam given by Dr. Brauer produced valid results. The ALJ explicitly discussed Dr. Brauer's report and cited to it at least nine times in his decision. (R. 20-21, 24, 26, 28). Among other evidence, the ALJ relied upon the results of the psychological consultative evaluation in making his determination that mental status exams have largely shown intact orientation, thought processes, memory, judgment, and insight and concentration and attention within normal limits. *Id*. Therefore, Dr. Brauer's report does not undermine the ALJ's subjective symptom determination.

Nicole's remaining arguments regarding the ALJ's subjective symptom assessment are undeveloped and may be treated as waived. *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) Putting aside waiver, Nicole's arguments are also without merit. First, Nicole points out that she was consistently diagnosed with bipolar disorder, but the ALJ omitted that disorder from her severe impairments and substituted it with a diagnosis of depression. Doc. 13 at 7. She claims this "difference is critical, given the wild mood swings inherent in bipolar disorder." *Id*. However, a "diagnosis alone does not establish that an impairment is severe or disabling." *Yvonne K. C. v.*

*Kijakazi*, 2022 WL 1104506, at *6 (N.D. Ill. April 13, 2022). The ALJ recognized that Nicole "has been assessed with bipolar disorder," but he also noted that she "testified that her medication has been effective at controlling her manic episodes and [] her primary issue is depression, low energy, and crying spells." (R. 26). Nicole has not shown how her bipolar diagnosis and the record compelled the ALJ to find her bipolar disorder a severe mental impairment. *Weaver v. Berryhill*, 746 F. App'x 574, 578-79 (7th Cir. 2018) ("It was [claimant's] burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work."); *Denton*, 596 F.3d at 419.

In her second undeveloped argument, Nicole notes that the ALJ stated that treatment notes reflect that at times her mood has been stable with medication. (R. 24). Nicole does not dispute that her symptoms were on occasions, stable with medication but emphasizes that an individual who suffers from multiple chronic mental impairments, like herself, is likely to have good days and bad days. *See Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) ("Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job."). Nicole is correct that stability does not necessarily mean she is capable of working. *See Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014). But the ALJ never claimed otherwise and he did not ignore that she had good days and bad days. The ALJ recognized Nicole's description of "waxing and waning symptoms, primarily of depression with some complaints of panic attacks and feeling judged by others." (R. 25). He also noted that "some treatment records [] indicated an expansive mood and excessive talking" and that Nicole "describ[ed] some symptoms consistent with mania." *Id*. at 28. However, the ALJ found that the evidence as whole, including Nicole's testimony, indicated that her medication has been effective at controlling her

manic episodes and that her primary symptoms are depression, low energy, and crying spells. *Id*. at 26, 28-29. Remand is therefore not required on this issue.

Nicole further objects that the ALJ "noted that mental health records beginning prior to the onset date indicated reports of multiple symptoms of depression, anxiety, and tearfulness, though he emphasized her reports during this period of no deficits in attention and concentration." Doc. 13 at 7. Nicole argues that these pre-onset date records are not relevant. However, "[m]edical evidence predating a claimant's onset date is not categorically irrelevant to a finding of disability." *Clayborne v. Astrue*, 2007 WL 6123191, at *5 (N.D. Ill. Nov. 9, 2007). The ALJ's only reference to Nicole's pre-onset date mental health records was in the first two sentences of his summary of the medical evidence, and Nicole has not shown that it was harmful error for the ALJ to reference this pre-onset evidence.[1] Moreover, Nicole misstates part of the ALJ's decision on this point. The ALJ did not find that Nicole reported no deficits in attention and concentration during the period prior to her December 31, 2016 onset date. Rather, he cited to a treatment note dated February 13, 2017 indicating that Nicole reported that her memory, attention, and concentration were good. (R. 24) (citing *id*. at 550).

Nicole finally notes that the ALJ stated that if Nicole was "experiencing crying spells and panic attacks of the frequency alleged, I would expect more mention of such symptoms in the contemporaneous treatment record," or corroborating evidence from past employers that her work was unsatisfactory or such symptoms interfered with her work performance. (R. 24, 26, 27). Nicole argues that her treatment records are replete with references to crying and panic and anxiety attacks and the ALJ could have inquired into her employment records more fully. The ALJ's

---

[1] Regarding pre-onset date evidence, the ALJ stated only: "Mental health treatment notes from DuPage County Health Department from 2015 through 2017, reflect that the claimant has endorsed depressive symptoms such as crying spells, isolation, irritability, and feelings of being overwhelmed. These record[s] show GAF scores ranging from 47-57." (R. 24).

consideration of Nicole's treatment records was not erroneous. The ALJ did not ignore the medical records referencing Nicole's crying and complaints of panic attacks and anxiety. Instead, the ALJ considered that examinations mentioned that Nicole was tearful at times and had some complaints of panic attacks and anxiety, along with other evidence, and concluded that the record did not support the extent of her alleged crying spells and panic attacks. *Id*. at 21, 23-26, 28-29. Nicole essentially asks the Court to reweigh the evidence because the ALJ gave it less weight than Nicole thinks it deserved, but this is not a basis for remand. *See Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Furthermore, it is Nicole's burden to prove she is disabled, and she failed to supply evidence to support her testimony that "every time I work somewhere I get fired because I have a problem with crying." (R. 46); *Marisol V. v. Kijakazi*, 2022 WL 865836, at *4 (N.D. Ill. Mar. 22, 2022) ("As the burden is ultimately on Plaintiff to prove the extent of her disability, she may be well-served to submit her employment records from her job.").

**B.     Opinion Evidence Evaluation**

Nicole argues the case requires reversal because that the ALJ erred in accepting, but also expanding, upon the limitations recommended by the state agency psychologists and in finding treating APN Dunn's opinions not persuasive. The ALJ's evaluation of the medical opinion evidence was subject to new regulations pertaining to claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 416.920c (2017). Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). An ALJ need only articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical

findings in [a claimant's] case record." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The regulations direct the ALJ to consider the persuasiveness of medical opinions using several listed factors. *See* 20 C.F.R. §§ 404.1520c(a), (c), 416.920c(a), (c). Supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). An ALJ must explain how he considered the factors of supportability and consistency in his decision, but he is not required to explain how he considered the other factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

APN Dunne, Nicole's treating mental health professional for medication management during the relevant period, offered opinions on Nicole's impairments on two occasions. She first completed a Psychiatric Report in June 2018, stating she had seen Nicole since October 2015 and was currently seeing her monthly. (R. 704). APN Dunne diagnosed Nicole with mild bipolar I disorder, current or most recent episode depressed, and PTSD. *Id*. She listed Nicole's complaints and symptoms as anxiety, crying spells, and history of mood instability. *Id*. She stated Nicole was unable to maintain employment which Nicole reported was due to depression, feeling everyone hates her, low motivation, low energy, and anxiety. *Id*. APN Dunne noted that Nicole's mood and affect were anxious and there were no serious limitations with her ability to complete household duties. *Id*. at 705-06. She opined that Nicole would have serious limitations with her abilities to respond appropriately to supervision, coworkers, and customary work pressures and perform tasks on a sustained basis without undue interruptions or distractions. *Id*. at 706-07. She wrote that Nicole would become overwhelmed easily and would need frequent breaks. *Id*. at 707. The ALJ found APN Dunne's opinion "not persuasive." *Id*. at 28.

State agency psychologists Steven Fritz, Psy.D., and Donald Cochran, Ph.D., reviewed the record in August 2018 and October 2018, respectively. (R. 69-81, 83-94).[2] Dr. Fritz opined that

---

[2]   In the "paragraph B" criteria, the state agency psychologists found that Nicole had mild limitations in understanding, remembering, or applying information, maintaining concentration, persistence, or pace,

Nicole was capable of three-to-four step tasks, no complex duties, routine and repetitive work, sustaining attention and concentration to persist for usual work periods, performing at an adequate pace and perseverance to maintain a schedule and on time attendance, completing a normal workday and workweek, performing at a minimally acceptable rate with normal breaks, socially undemanding work with reduced interpersonal contact away from the public, and relating acceptably to a minimally necessary degree with coworkers and supervisors. *Id.* at 79. On reconsideration, Dr. Cochran offered a similar opinion, finding Nicole capable of: simple work related tasks and instructions with adequate concentration and ability to complete tasks; social interactions compatible with the requirements on standard work settings; and working independently with usual supervision. *Id.* at 92. The ALJ found the state agency psychologists' opinions persuasive but expanded upon their recommended limitations given the more recent evidence and Nicole's testimony. *Id.* at 27.

On March 6, 2020, APN Dunne completed a Mental RFC Statement form and reported a "poor" prognosis. (R. 1286-89). APN Dunne assessed Nicole's mental abilities in 20 work-related areas under the categories of understanding and memory, sustained concentration and memory, social interaction, and adaption. *Id.* at 1287-88. On a scale ranging from category I (no performance preclusion) to category IV (precludes performance for 15% or more of an 8-hour

---

and adapting or managing oneself and moderate limitations in interacting with others. (R. 75, 89). In assessing Nicole's mental RFC, Drs. Fritz and Cochran assessed no limitations in the areas of understanding and memory and adaptation. *Id.* at 77, 79, 90-91, 92. In the area of sustained concentration and persistence, both psychologists found moderate limitations with respect to Nicole's abilities to: (1) maintain attention and concentration for extended periods; (2) work in coordination or proximity to others without being distracted by them, and (3) compete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 78, 91. Regarding Nicole's social interaction limitations, both psychologists concluded that Nicole would have moderate limitations in her ability to interact appropriately with the general public. *Id.*

work day), she rated 6 abilities as category III and 6 abilities as category IV.[3] APN Dunne opined

that Nicole would: be off task more than 30% of an 8-hour work day; miss more than 6 days of

work per month; and be able to perform a job on a sustained, consistent, useful and routine basis

without continuous supervision or undue interruptions and distractions about 20% of the time. *Id.*

at 1288. Finally, APN Dunne indicated that Nicole was unable to obtain and retain work in a

competitive work environment, 8 hours per day, 5 days per week. *Id.* at 1289. She based her

opinion on Nicole's psychiatric evaluation and progress and office notes. *Id.* The ALJ found APN

Dunne's opinion not persuasive. *Id*. at 28-29.

    In her first challenge to the ALJ's evaluation of the medical opinion evidence, Nicole

argues that the ALJ "appeared to play doctor and rely solely on his lay hunches rather than the

opinions of qualified mental health professional" in finding greater limitations than those

recommended by the state agency consultants. Doc. 13 at 10. The Court disagrees. Because an

ALJ is not required to adopt any one opinion in full, the ALJ did not play doctor simply by

assigning restrictions that did not match the opinion of any specific doctor. *Whitehead v. Saul*, 841

F. App'x 976, 982-83 (7th Cir. 2020); *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007); *Diaz

v. Chater,* 55 F.3d 300, 306 n.2 (7th Cir. 1995) (rejecting argument that ALJ erroneously made a

"medical judgment" by not relying "solely on the opinions of physicians" because the ALJ "must

---

[3]     APN Dunne rated six of Nicole's abilities as falling within Category IV: (1) sustain an ordinary
routine without special supervision; (2) work in coordination with or in proximity to others without being
distracted by them; (3) complete a normal workday and workweek without interruptions from
psychologically based symptoms, and perform at a consistent pace without an unreasonable number and
length of rest periods; (4) interact appropriately with the general public; (5) get along with coworkers or
peers without distracting them or exhibiting behavioral extremes; and (6) maintain socially appropriate
behavior, and adhere to basic standards of neatness and cleanliness. (R. 1287-88). APN Dunne checked
that Nicole has a category III limitation in the following areas: (1) understand and remember detailed
instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended
periods of time; (4) accept instructions and respond appropriately to criticism from supervisors; (5) respond
appropriately to changes in the work setting; and (6) set realistic goals or make plans independently of
others. *Id*. A category III limitation precludes performance for 10% of an 8-hour work day. *Id.* at 1286.

consider the entire record, including all relevant medical and nonmedical evidence, such as the claimant's own statements").

Here, the ALJ derived his restrictions from the state agency reviewing psychologists. First, he agreed with the state agency psychologists' assessment of moderate social limitations which he found consistent with the record. *Id*. at 27. He largely adopted their finding of independent work with usual supervision but added that Nicole can tolerate brief and superficial interaction with the public, supervisors, and co-workers with no work involving direct public service, tandem tasks, or in crowded, hectic environments. *Id*. Second the concentration, persistence, and pace restrictions the ALJ adopted are consistent with the state agency psychologists' findings. The ALJ adopted their simple work-related tasks limitation with an adequate ability to concentrate and complete tasks on sustained basis. He acknowledged Nicole reported some difficulties with concentration and difficulty managing stress. *Id*. Based on these statements and the overall medical evidence, the ALJ reasonably found that a mental RFC limiting work to simple, routine tasks with no more than simple decision-making and no more than occasional and minor changes in the work setting and work requiring the exercise of only simple judgment was appropriate. The ALJ added restrictions regarding work at an average production pace with no multitasking or significant self-direction requirements. *Id*. at 21, 22. In the end, it was the ALJ's responsibility to determine Nicole's RFC considering the overall record, and his incorporation of several additional limitations suggests that he fully accounted for the medical evidence and subjective allegations. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Burmester*, 920 F.3d at 510.

Nicole also argues it was improper for the ALJ to find APN Dunne's opinions not persuasive. An ALJ is entitled to discount the opinion of a treating provider if it is inconsistent with other evidence in the record, including the provider's own treatment notes and objective

medical evidence in the record. *Prill*, 23 F.4th at 750-51. In making his determination, the ALJ acknowledged that "APN Dunne is a longstanding treating source and a mental health professional." (R. 28). However, the ALJ rejected Dunne's opinions that Nicole would need frequent breaks, be off task more than 30% of a workday, and absent 6 or more days per month because they were not well supported by other medical evidence in the record, including her own treatment notes and the results of the psychological consultative evaluation, and Nicole's admitted activities of daily living, including her ability to help her children maintain their school schedule and attend appointments regularly. With respect the ALJ's weighing of APN Dunne's opinion, Nicole largely reasserts the same arguments that she made in her challenge to the ALJ's evaluation of her subjective allegations. To Nicole, the ALJ's reliance on the above evidence was erroneous because: (1) the ALJ misleadingly relied on normal findings in mental status examinations to the exclusion of abnormal findings, (2) improperly translated her basic and necessary daily activities into an ability to sustain full-time work, and (3) relied heavily on the results of the brief consultative examination and failed to recognized that the consultative examiner "opine[d] that her symptoms and limitations are as severe as she claims." Doc. 13 at 10-11. These arguments are unavailing for the same reasons discussed earlier with respect to the subjective symptom analysis.

Furthermore, Nicole does not challenge the other reasons the ALJ gave for rejecting Dunne's opinions. The ALJ found her opinions not consistent with Nicole's "conservative treatment with infrequent exacerbations" of mental symptoms and "consistency of GAF scores" of 51 and 57 from February 2017 to January 2021 "suggest moderate limitations." (R. 29, 1336-38). The record supports these conclusions, and they are specific and legitimate reasons, supported by substantial evidence, to reject APN Dunne's opinions. *Felts v. Saul*, 797 Fed. Appx. 266, 269 n.1 (7th Cir. 2019); *Gerstner v. Berryhill*, 879 F.3d 257, 263 n.1 (7th Cir. 2018); *Rodolfo M. v. Kijakazi*,

2023 WL 264913 at *3 (N.D. Ill. Jan. 18, 2023). The ALJ also found APN Dunne's opinions unsupported given recent improved mental stability (R. 29), and Nicole does not dispute the ALJ's conclusion that her mental health had some improvement. Thus, the ALJ reasonably considered the factors of supportability and consistency, noting Dunne's opinions were not supported by her own exam findings and were inconsistent with other record evidence.

Nicole further argues that it is "unclear why the ALJ perceives the treatment record to be so benign" and then simply lists parts of the treatment record that she claims are consistent with APN Dune's opinions. Doc. 13 at 11-2. But the ALJ adequately explained that the lack of supportability of APN Dunne's opinions with her own treatment notes and the inconsistency of her opinion with the record as a whole warranted finding her opinions unpersuasive. Nicole has not identified any lines of evidence that the ALJ ignored in the evidence she cites, and the Court will not reweigh the evidence listed by Nicole.

## C. Mental RFC Determination

Nicole last contends that the ALJ's RFC assessment failed to adequately account for her moderate mental limitations. Citing Social Security Ruling 96-8p, Nicole's main contention is that the ALJ failed "to explain how [the combination of her] moderate limitations would be consistent with an ability to perform and complete work-related tasks five days per week, eight hours per day." Doc. 13 at 13. RFC is the "most a person can do in a work setting despite the person's limitations." *Jeske*, 955 F.3d at 593. When a claimant alleges a number of impairments, the ALJ must consider "the *aggregate* effect of th[e] entire constellation of ailments." *Golembiewski v. Barnhart*, 322 F.3d 912, 914 (7th Cir. 2003) (emphasis in original); *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011). Social Security Ruling 96-8p requires an ALJ to discuss the claimant's ability to perform sustained work activities in an ordinary work setting on a regular

and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule). SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "But we may affirm an ALJ's decision that does not conform with SSR 96-8p's requirements if we are satisfied that the ALJ built an accurate and logical bridge from the evidence to [his] conclusion." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quotation marks omitted).

In the Court's view, the ALJ sufficiently explained how the evidence supports his conclusion that Nicole can perform sustained work activities. The ALJ thoroughly reviewed the medical and nonmedical evidence regarding Nicole's mental limitations. (R. 22-26). The ALJ began his discussion by noting that Nicole testified that her medication had been effective at controlling her manic episodes and her primary issues were depression, low energy, and crying spells. *Id*. at 26. The ALJ reviewed the medical evidence regarding Nicole's mental status exams. The ALJ noted that Nicole complained of waxing and waning symptoms, but "mental status exams have not revealed any significant abnormalities." *Id*. These exams have largely shown intact orientation, thought processes, attention, concentration, memory, judgment, and insight. *Id*. at 26, 28. The ALJ also noted that the treatment records occasionally mention that Nicole was tearful at times during exams but there was little mention of crying spells. *Id*. at 26. The ALJ considered that Nicole's course of treatment was conservative with medication management and therapy with infrequent exacerbations and her GAF scores repeatedly indicated moderate symptoms. *Id*. at 29. The ALJ also considered that more recently in October 2020 and January 2021, Nicole stated that she was able to manage stressors and was not crying, despite discontinuing aripiprazole in July 2020, which was prescribed for mood instability. *Id*. at 26, 29, 1323, 1325, 1333. The ALJ also reviewed the results of the July 2018 psychological consultative evaluation which revealed that Nicole had normal attention and concentration, a grossly intact general fund of knowledge,

appropriate judgment, and a reasonably well-developed capacity for abstraction. *Id*. at 24, 717-18. The ALJ noted the mental RFC assessments of the state agency psychologists who opined that Nicole could perform simple tasks, retained adequate ability to concentration and complete tasks, could maintain social interactions compatible with standard work settings, and could work independently with usual supervision. *Id*. at 27, 79, 92.

The ALJ also discussed the non-medical evidence regarding Nicole's RFC, including the evidence about Nicole's ability to perform daily activities. The ALJ noted that Nicole prepares some simple meals, does some housework, and assists her children in maintaining their school schedules and schoolwork, including her son's homeschooling. (R. 23, 27). The ALJ cited Nicole's ability to perform some home rehabilitation jobs. *Id*. at 26, 27. The ALJ observed that Nicole reported she lost past jobs due to crying or being too emotional, but there was no corroboration in the record that her symptoms interfered with her work performance. *Id*. at 26.

After reviewing the medical and non-medical evidence, the ALJ explained that he found the state agency psychologists' moderate social limitations to be persuasive and consistent with record. (R. 27). In deference to Nicole's description of her anxiety and bouts of crying, he limited Nicole to work involving brief and superficial interaction with the public which is incidental to her primary job duties and precluded work involving direct public service, tandem tasks, and crowded, hectic environments. *Id*. The ALJ noted that Nicole reported some difficulties with concentration and managing stress. *Id*. In order to reduce workplace stressors which could exacerbate her symptoms, the ALJ explained that Nicole could only perform simple and routine work tasks with no more than simple decision making and no more than occasional and minor changes in the work setting requiring the use of only simple judgment. *Id*. The ALJ also limited Nicole to work at an average production pace with no multitasking or significant self-direction requirements. *Id*. at 21,

22.  The ALJ explained why she discounted APN Dunne's opinions regarding the need for frequent breaks, off-task time, and absences, noting these opinions were inconsistent with generally intact mental status exams related to attention, concentration, and memory, the consultative evaluation results, the recent improvement in Nicole's mood stability, her overall conservative treatment with infrequent exacerbations, consistent GAF scores suggesting moderate limitations, and Nicole's own description of her ability to function on a daily basis *Id*. at 28-29. On this record, this ALJ's discussion contained the required logical and accurate bridge between the evidence and his conclusion that Nicole would be able to sustain the on-task and attendance requirements of full-time work.

Moreover, the state agency psychologists' assessments support the ALJ's determination that Nicole can maintain a full-time work schedule. 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1) (state agency psychological consultants are "highly qualified and experts in Social Security disability evaluation."); *Grotts*, 27 F.4th at 1278. In their mental RFC assessments, Drs. Fritz and Cochran opined that Nicole could sustain full-time work despite moderate limitations in her abilities to: (1) maintain attention and concentration for extended periods and (2) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 78-79, 91-92). Dr. Fritz also opined that Nicole: (1) retains sufficient attention and concentration to persist at and complete work activities for the usual periods required in the general work force; (2) has the capacity for adequate pace and perseverance to maintain a schedule, on time attendance, and complete a normal workday and work week on a regular basis; and (3) is able to perform at minimally acceptable rates requiring only the common frequency and lengths of rest breaks. *Id*. at 79. In Dr. Cochran's narrative explanation, he opined that Nicole's ability to concentrate and

complete tasks is adequate. *Id*. at 92. Nicole submits that the medical record overwhelmingly supports a finding of significant deficits in her ability to sustain unskilled work on a full-time basis. Doc. 13 at 15. But the medical evidence Nicole relies on, APN Dunne's opinions, was properly discounted and the ALJ was not required to include her limitations in his assessment. *Outlaw v. Astrue*, 412 F. App'x 894, 898 (7th Cir. 2011). Accordingly, the ALJ's determination that Nicole can sustain full-time work activity is supported by "more than a mere scintilla" of evidence. *Biestek*, 139 S.Ct. at 1154.

## CONCLUSION

For the reasons stated above, Plaintiff's request for reversal of the ALJ's decision is denied, the Acting Commissioner's Motion for Summary Judgment [16] is granted, and the ALJ's decision is affirmed. The Clerk is directed to enter judgment in favor of the Acting Commissioner and against Plaintiff.

**SO ORDERED.**

Dated: February 21, 2023

_____
Sunil R. Harjani
United States Magistrate Judge